**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAUNA COOKE, | ) ELECTRONICALLY FILED |
| | ) |
| *Plaintiff,* | ) CIVIL ACTION No. |
| | ) |
| vs. | ) |
| | ) |
| KRAG FORD OF ADAMSBURG LLC | ) |
| d/b/a KENNY ROSS FORD; | ) |
| TRANSUNION LLC; and EQUIFAX | ) |
| INFORMATION SERVICES, LLC, | ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Shauna Cooke, by and through the undersigned counsel, now files the within Complaint in Civil Action against Defendants KRAG Ford of Adamsburg, LLC d/b/a Kenny Ross Ford ("Kenny Ross"), TransUnion, LLC ("TransUnion"), and Equifax Information Services, LLC ("Equifax", together the "Defendants"), averring as follows:

## PARTIES

1.      Plaintiff, Shauna Cooke ("Plaintiff") is an adult individual who resides at 1210 Center Avenue, North Versailles, PA 15137.

2.      At all times pertinent hereto, Plaintiff, an individual, was a "consumer" as such term is defined by 15 U.S.C. §1681a(c).

3.      Defendant Kenny Ross is registered in the Commonwealth of Pennsylvania as a "domestic business corporation" formed under the laws of Pennsylvania. Defendant maintains a registered office and business operations at 104 Black Hill Road, Adamsburg, Pennsylvania 15611 (hereinafter, the "Dealership").

4.      At all times pertinent hereto, Defendant Kenny Ross, a corporation, is a "person" as such term is defined by 15 U.S.C. §1681a(b).

5.      Defendant Kenny Ross is involved in the business of selling and leasing vehicles to consumers. Defendant Kenny Ross also is in the business of providing financing options to its consumers via its internal and on-site finance company, Ford Motor Credit Company.

6.      Defendant Kenny Ross is and at all times relevant hereto was, a "furnisher" of credit information as such term is described in 15 U.S.C. § 1681s-2 *et seq.*

7.      Defendant TransUnion is a foreign entity, formed in Delaware, with a registered office located at 555 West Adams Street, Chicago, Illinois 60661.

8.      Defendant TransUnion is a credit reporting agency ("CRA") licensed to do business in Pennsylvania.

9.      Defendant TransUnion is, and at all times pertinent hereto was, regularly doing business in Pennsylvania.

10.     Defendant TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as such term is defined in 15 U.S.C. § 1681a(d), to third parties.

11.     Defendant TransUnion furnishes such consumer reports to third parties under contract for monetary compensation.

12.     At all times pertinent hereto, Defendant TransUnion, a business entity, is a "person" and "consumer reporting agency" as such terms are defined by 15 U.S.C. §1681a(b) and (f).

13.     Defendant Equifax is a foreign entity, formed in Georgia, with a registered office located at 1550 Peachtree Street NW, Atlanta, Georgia 30309-2402.

14.     Defendant Equifax is a CRA licensed to do business in Pennsylvania.

15.    Defendant Equifax is, and at all times pertinent hereto was, regularly doing business in Pennsylvania.

16.    Defendant Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as such term is defined in 15 U.S.C. § 1681a(d), to third parties.

17.    Defendant Equifax furnishes such consumer reports to third parties under contract for monetary compensation.

18.    At all times pertinent hereto, Defendant Equifax, a business entity, is a "person" and "consumer reporting agency" as such terms are defined by 15 U.S.C. §1681a(b) and (f).

## JURISDICTION AND VENUE

**A.    This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331.**

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff is advancing claims under the Fair Credit Reporting Act, 15 U.S.C. § 1381 *et seq.* (the "FCRA") (Plaintiff's claims arising under the FCRA are identified as the "Federal Law Claims"). Plaintiff is also advancing claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 Pa. C.S.A. § §201-1 *et. seq.* (the "UTPCPL") (Plaintiff's claim arising under the UTPCPL is identified as the "State Law Claim").

20.    This Court may exercise supplemental jurisdiction over the State Law Claim pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claim share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claim.

21.    Further, the operative facts between the Federal Law Claims and the State Law Claim mirror one another to such a degree that they form the "same case or controversy" under

Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claim.

**B.      The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

22.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (hereinafter, the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claim occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C § 1391(b).

23.      Specifically, these events and omissions occurred within Westmoreland County, Pennsylvania, which is one of the counties encompassed by the Western District.

24.      This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Westmoreland County, Pennsylvania and conduct arising within Westmoreland County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.      This Court May Exercise Personal Jurisdiction Over Defendants.**

25.      This Court may exercise personal jurisdiction over Defendants pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court's exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.

26.      Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

27.     42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42  a. C.S. § 5301(a).

28.     As discussed above, Defendant Kenny Ross has registered itself as a domestic business corporation in the Commonwealth of Pennsylvania and thereby subjected itself to the general jurisdiction of Pennsylvania's tribunals; further, Defendant Kenny Ross maintains the Dealership in Pennsylvania and conducts business operations within Pennsylvania. Accordingly, Defendant Kenny Ross may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

29.     This Court may exercise personal jurisdiction over Defendants TransUnion and Equifax (together, the "CRA Defendants") as they have the required minimum contacts with this forum for purposes of Pennsylvania's Long-Arm statute codified within 42 Pa. C.S. § 5322. Further, the exercise of jurisdiction over the CRA Defendants by and through Pennsylvania's Long-Arm Statute complies with the traditional notions of fair play and substantial justice required by the Due Process Clause of the Constitution given the "specific jurisdiction" that exists over the CRA Defendants.

30.    At the outset, Pennsylvania's Long-Arm statute provides that a tribunal may exercise personal jurisdiction where an individual or entity is "transacting any business in this Commonwealth." 42 Pa.C.S. § 5322.

31.    The following enumerated subsections within 42 Pa. C.S. § 5322(a) define "transacting any business" to include:

> (1)(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an act.
> (1)(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
> (1)(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.
> (1)(v) The ownership, use or possession of any real property situate within this Commonwealth.
> (3) Causing harm or tortious injury by an act or omission in this Commonwealth
> (5) having an interest in, using, or possessing real property in this Commonwealth
> (10) committing any violation within the jurisdiction of this Commonwealth of any statue, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit.

*Id.*

32.    In the instant matter, personal jurisdiction can be found over the CRA Defendants under Pennsylvania's Long-Arm Statute for the following reasons:

a)    The CRA Defendants routinely engage in commercial activities within the Commonwealth of Pennsylvania for the purpose of pecuniary gain by assembling, evaluating, and disbursing information concerning Pennsylvania consumers for the purpose of furnishing consumer reports to business located in Pennsylvania, specifically to Defendant Kenny Ross; and

b)      As averred more fully below, the CRA Defendants violated numerous statutory provisions of federal and state law and the underlying events giving rise to the CRA Defendants' unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania.

33.      This Court's exercise of personal jurisdiction over the CRA Defendants by and through Pennsylvania's Long-Arm Statute comports with the Due Process Clause of the Constitution through the "specific jurisdiction" that exists over the CRA Defendants as the causes of action complained of herein arise specifically from Defendants' contact with the forum.  U.S. Const. amend XIV, § 1.

34.      The inquiry into whether "specific jurisdiction" exists possesses three parts. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). First, a "defendant 'must have purposefully directed [its] activities' at the forum."  *Id.* quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  Second, the instant litigation must "arise out of or relate to at least one of those activities."  *Id.* quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).  And third, whether the exercise of jurisdiction "'comport[s] with fair play and substantial justice.'"  *Id.* quoting *Burger King*, 471 U.S. at 476.

35.      The CRA Defendants have engaged in business operations for pecuniary gain within the forum and these business operations were, at all times relevant hereto, intentionally effectuated by the Defendants.  As more thoroughly delineated below, Plaintiff was subject to these business operations through her relationship with Defendant Kenny Ross, and correspondingly the Federal Law Claims and the State Law Claim arise from said relationship.  Further, the Federal Law Claims and the State Law Claim arose because of these business operations and from the unlawful activity the CRA Defendants engaged in occurred within the scope of these operations.

36.     The exercise of personal jurisdiction over the CRA Defendants complies with the notions of "fair play and substantial justice" required by *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The operative facts occurred within this forum, the evidence and witnesses supporting both the Federal Law Claim and the State Law Claim are located primarily here.  As such, this forum offers both Plaintiff and Defendants the most convenient and effective relief opposed to other forums and ensures each party may fairly access the evidence to support its claims and/or defenses.

37.     Therefore, this Court may exercise proper personal jurisdiction over the CRA Defendants based on their actions and Pennsylvania's Long-Arm Statute; the claims against them may proceed accordingly.

## **FACTUAL BACKGROUND**

38.     On September 19, 2024, Plaintiff leased a Ford Bronco from Defendant Kenny Ross.

39.     At the time she leased the Ford Bronco, Plaintiff maintained a credit score of approximately 700.

40.     On this day, Plaintiff authorized Defendant Kenny Ross to conduct a single credit inquiry for financing purposes which was correspondingly effectuated by Ford Motor Credit Corporation.

41.     On September 21, 2024, at least six fraudulent credit "hard inquiries" (the "hard inquiries") were made on Plaintiff's consumer credit report (the "Account"). See **Exhibits A, B, and C**, true and correct copies of the Accounts assembled and disbursed by the CRA Defendants and Experian Information Solutions, Inc. on October 20, 2024.

42.    The hard inquiries immediately reduced Plaintiff's credit score from approximately 700 down to 620.

43.    The inaccurate hard inquiries thereafter became a permanent component of the Plaintiff's Account and were reported to those who asked to review the credit history of Plaintiff.

44.    On or about October 5, 2024, Plaintiff received a letter from Ally Bank (the "Ally Bank Letter"), one of the banks to which the fraudulent hard inquiries were made. This letter explained that the loan application, on which Plaintiff was listed as a co-applicant to an individual named Ruthann Nolen ("Ms. Nolen"), had been denied. See **Exhibit D**, a true and correct copy of the Ally Bank Letter dated October 5, 2024.

45.    Plaintiff was shocked to receive this letter, as she had not applied to be a co-applicant on Ms. Nolen's loan application. Indeed, Plaintiff has no knowledge of or association with Ms. Nolen.

46.    Thereafter, Plaintiff received three additional letters from entities to which the fraudulent hard inquiries were made. See **Exhibits E, F, and G**, true and correct copies of the letters from GoFi, LLC dated October 13, 2024, Associated Bank Auto Finance dated October 14, 2024, and Global Lending Services dated October 15, 2024, respectively.

47.    On October 18, 2024, Plaintiff's husband, Chris Cooke ("Mr. Cooke"), visited the Dealership with the Ally Bank Letter and spoke with Defendant Kenny Ross's manager, Kristy Hartman ("Ms. Hartman"), concerning the hard inquiries.

48.    Ms. Hartman vehemently denied that Defendant Kenny Ross had made any error.

49.    Several days later, Plaintiff received a telephone call from Defendant Kenny Ross's sales manager, John Doe, who admitted that Defendant Kenny Ross had mistakenly associated Plaintiff with Ms. Nolen's loan application.

50.    John Doe assured Plaintiff that the mistaken association would be corrected.

51.    To date, Defendant Kenny Ross has made no effort to correct its internal error regarding the fraudulent hard inquiries on Plaintiff's Account.

52.    On or around November 2024, Plaintiff was advised that her furnace in her home would need replaced prior to the upcoming winter season.

53.    At that time, Plaintiff was financially unable to purchase a new furnace without additional credit or funding.

54.    However, given the fraudulent hard inquiries on her Account, she refrained from seeking additional credit or funding from any source in fear that it would further diminish her credit score.

55.    Plaintiff spent the next six months making numerous attempts to contact Ms. Hartman, John Doe, and Defendant Kenny Ross to discuss the hard inquiries that remained on her Account.

56.    Defendant Kenny Ross ignored each of Plaintiff's attempts.

57.    To date, Defendant Kenny Ross has not contacted Plaintiff regarding the hard inquiries.

58.    Importantly, Plaintiff is self-employed and therefore does not enjoy the benefits of paid time off, paid vacation time, or other compensation at any time when she is not actively working.

59.    To that end, Plaintiff has lost time working as a direct consequence of these time-consuming efforts to resolve the adverse and erroneous information associated with the Account.

60.    By January 2025, the fraudulent hard inquiries had not been expunged from Plaintiff's Account and her score continued to decline.

61.     On January 13, 2025, Plaintiff, by and through her counsel, circulated letters to each of the Defendants expressly disputing the accuracy of the hard inquiries on the Account (the "Dispute Letters"). See **Exhibit H**, true and correct copies of the Dispute Letters.

62.     The CRA Defendants, together with Experian Information Solutions, Inc. ("Experian"), are the three largest CRAs as defined by 15 U.S.C. §1681a(f).

63.     The CRA's primary business is the sale of consumer reports (commonly known as "credit reports") to third parties and consumers.

64.     The CRA Defendants have a duty under the FCRA to, upon notice that information contained within a credit report is disputed, "indicate that fact in each consumer report that includes the disputed information." 15 U.S.C. §1681c(f).

65.     Further, the CRA Defendants have a duty to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." §1681a(f).

66.     None of the Defendants conducted an investigation, contacted Plaintiff, contacted third-parties, or reviewed underlying information with respect to the disputed hard inquiries and accuracy of Plaintiff's Account.

67.     At no point after receiving the Dispute Letters did any of the Defendants initiate contact with Plaintiff to determine the veracity and extent of Plaintiff's Dispute Letters.

68.     The CRA Defendants relied on their own judgment and the information provided to them by Defendant Kenny Ross rather than grant credence to the information provided by Plaintiff in the Dispute Letters.

69.     Upon information and belief, Defendant Kenny Ross failed to instruct the CRA Defendants to remove the false information regarding the hard inquiries on Plaintiff's credit report.

70.     Rather, on or about June 3, 2025, on her own initiative, Plaintiff filed online disputes with each of the CRA Defendants and Experian via their respective online dispute processes.

71.     Thereafter, at the end of June 2025, the fraudulent hard inquiries were removed from Plaintiff's Account with Experian.

72.     To date, six of the hard inquiries remain on Plaintiff's Account with Defendant TransUnion. See **Exhibit I**, a true and correct copy of the Account assembled and disbursed by Defendant TransUnion on August 21, 2025.

73.     To date, two of the hard inquiries remain on Plaintiff's Account with Defendant Equifax. See **Exhibit J**, a true and correct copy of the Account assembled and disbursed by Defendant Equifax on August 20, 2025.

74.     As such, Plaintiff's credit score reflected on the Account remains inaccurate to date due to the fraudulent hard inquiries conducted by Defendant Kenny Ross.

## COUNT I
### FAILURE TO INVESTIGATE PLAINTIFF'S DISPUTE, COMMUNICATE WITH THE CRA DEFENDANTS, AND CORRECT THE INACCURATE INFORMATION IN VIOLATION OF THE FCRA 15 U.S.C. § 1681s-2(b)
### *Shauna Cooke v. Kenny Ross*

75.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

**A.     Defendant Kenny Ross Received Actual Notice of Plaintiff's Dispute.**

76.     Plaintiff provided Defendant Kenny Ross with a proper and adequate notice of dispute on January 13, 2025 as required under 15 U.S.C. § 1681i(a)(2). See **Exhibit H**.

**B.      Defendant Kenny Ross Failed to Investigate Plaintiff's Disputes.**

77.      Upon receipt of the Dispute Letter, Defendant Kenny Ross failed to fully and properly investigate Plaintiff's disputes of Defendant Kenny Ross's representations, review all relevant information regarding Plaintiff's disputes, accurately report any information regarding Plaintiff to the CRA Defendants, verify accurate information, and permanently and lawfully correct its own internal records in violation of 15 U.S.C. § 1681s-2(b).

78.      Indeed, Defendant Kenny Ross has not contacted Plaintiff regarding the contents of the Dispute Letter to date.

**C.      Defendant Kenny Ross Failed to Accurately Furnish Information to the CRA Defendants.**

79.      Defendant Kenny Ross had "reasonable cause to believe that the information [concerning Plaintiff's Account] was inaccurate" as such term is defined in 15 U.S.C. § 1681s-2(a)(1)(D).

80.      More specifically, Defendant Kenny Ross had actual knowledge that Plaintiff neither endorsed nor consented to being listed on Ms. Nolen's loan.

81.      Indeed, management of Defendant Kenny Ross admitted to Plaintiff that they erroneously associated Plaintiff with Ms. Nolen's loan application.

82.      Nonetheless, Defendant Kenny Ross furnished such information regarding Plaintiff to the CRA Defendants in violation of 15 U.S.C. § 1681S-2(a)(1)(A).

**D.      Defendant Kenny Ross Failed to Correct the Inaccurate Information Reported to the CRA Defendants.**

83.      As averred hereinabove, John Doe expressly communicated to Plaintiff Defendant Kenny Ross's mistaken association.

84.     Upon having actual notice of its own mistake and receiving the Dispute Letter, Defendant Kenny Ross failed to correct the fraudulent hard inquiries or notify the CRA Defendants of the same in violation of 15 U.S.C. § 1681S-2(a)(2).

**E.    Plaintiff is Entitled to Statutory Damages or Actual Damages, Punitive Damages, Attorneys' Fees, and Costs.**

85.     15 U.S.C. § 1681n provides that when a person willfully fails to comply with any requirement imposed upon it with respect to any consumer, the consumer may collect:

(a)    Actual damages sustained by the consumer as a result of the failure or statutory damages not less than $100 and not more than $1,000;

(b)    Punitive damages in an amount to be determined by this Court; and

(c)    The costs of the action together with reasonable attorney's fees.

86.     As averred hereinabove, Defendant Kenny Ross's conduct, action, and inaction were willful as evidenced by its blatant refusal to respond to Plaintiff's communications and disregard for the contents of the Dispute Letter.

87.     Defendant Kenny Ross's willful and knowing actions described hereinabove were the actual and proximate cause that resulted in violations of Plaintiff's rights under the FCRA, damage to her reputation, economic loss, emotional distress, and interference with Plaintiff's normal and usual activities.

88.     Therefore, Defendant Kenny Ross is liable to Plaintiff for statutory damages or actual damages, whichever is greater, punitive damages, attorney's fees, and costs associated with this litigation pursuant to 15 U.S.C. § 1681n.

89.     In the alternative, Defendant Kenny Ross was negligent, entitling Plaintiff to recover actual damages, costs associated with this litigation, and attorney's fees pursuant to 15 U.S.C. § 1681o.

90.     WHEREFORE, Plaintiff, Shauna Cooke, seeks a judgment against Defendant Kenny Ross for willful noncompliance of the FCRA and seeks: (i) actual damages to be proven at trial or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000 per violation; (ii) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for Defendant Kenny Ross's willful violation; (iii) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3); and (iv) any further legal and equitable relief as this Court may deem just and proper.

**COUNT II**
**ENGAGING IN FRAUDULENT AND DECEPTIVE CONDUCT**
**IN VIOLATION OF THE UTPCPL 73 Pa. C.S.A. § 201-1 *et. seq.***
***Shauna Cooke v. Kenny Ross***

91.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

92.     The UTPCPL identifies specific conduct as "unfair or deceptive acts or practices," including, in pertinent part, the following:

(a)     Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(b)     Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

(c)     Using deceptive representations in connection with goods or services;

(d)     Representing that goods or services have sponsorship or approval that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that she does not have;

(e)     Engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (*i.e.*, reporting false credit information).

73 Pa. C.S.A. §201-2(4).

**A.      Defendant Kenny Ross Engaged in Fraudulent and Deceptive Conduct.**

93.     Defendant Kenny Ross can be found to have engaged in the above conduct by inaccurately including Plaintiff on a loan application for Ms. Nolen, of whom Plaintiff has no knowledge, affiliation, or relation, for the following reasons:

94.     The inaccuracy causes significant confusion and misunderstanding as to Plaintiff's approval or certification of the loan;

95.     The inaccuracy causes significant confusion and misunderstanding as to Plaintiff's affiliation, connection, and association with Ms. Nolen;

96.     The inaccuracy represents that Ms. Nolen's loan has been sponsored by Plaintiff, which it has not;

97.     The inaccuracy, and Defendant Kenny Ross's subsequent failure to correct the inaccuracy, has caused a detrimental misrepresentation of Plaintiff's credit score as reflected in her Account.

98.     Defendant Kenny Ross's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law.

**B.      Plaintiff is Entitled to Statutory Damages or Actual Damages, Treble Damages, Attorney's Fees, and Costs.**

99.     73 P.S. §201-9.2 provides that when a person leases goods primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property as a result of a Defendant's commission of any of the acts enumerated in 73 P.S. §201-2(4), the person may collect:

(a)     Actual damages sustained by the person or $100, whichever is greater;
(b)     Treble damages at this Court's discretion of an amount not less than $100; and
(c)     The costs of the action together with reasonable attorney's fees.

16

100.    Defendant Kenny Ross's conduct described herein arose out of Plaintiff's leasing a vehicle from Defendant Kenny Ross.

101.    Defendant Kenny Ross's willful and knowing actions described hereinabove were the actual and proximate cause that resulted in violations of Plaintiff's rights under the UTPCPL, damage to her reputation, economic loss, emotional distress, and interference with Plaintiff's normal and usual activities.

102.    Therefore, Defendant Kenny Ross is liable to Plaintiff for statutory damages or actual damages, whichever is greater, treble damages, attorney's fees, and costs associated with this litigation pursuant to 73 Pa. C.S.A. §201-9.2.

103.    WHEREFORE, Plaintiff, Shauna Cooke, seeks a judgment against Defendant Kenny Ross for willful noncompliance of the UTPCPL and seeks: (i) actual damages to be proven at trial or statutory damages pursuant to 73 Pa. C.S.A. §201-9.2 of not less than $100, whichever is greater; (ii) an award up to three times the actual damages sustained, but not less than $100, pursuant to 73 Pa. C.S.A. §201-9.2; (iii) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 73 Pa. C.S.A. §201-9.2; and (iv) any further legal and equitable relief as this Court may deem just and proper.

<u>**COUNT III**</u>
**FAILURE TO INDICATE THE HARD INQUIRIES AS "DISPUTED" ON PLAINTIFF'S CREDIT REPORT IN VIOLATION OF THE FCRA 15 U.S.C. § 1681c(f)**
***Shauna Cooke v. TransUnion and Equifax***

104.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

105.    15 U.S.C. § 1681c(f) provides: "If a consumer reporting agency is notified…that information regarding a consumer who was furnished to the agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information."

**A.    The CRA Defendants Received Actual Notice of Plaintiff's Dispute.**

106.    As averred hereinabove, Plaintiff circulated Dispute Letters to the CRA Defendants on January 13, 2025. See **Exhibit H**.

107.    Thereafter, on or about June 3, 2025, Plaintiff filed online disputes with the CRA Defendants regarding the hard inquiries.

**B.    The Hard Inquiries Are Not Designated as "Disputed" on Plaintiff's Accounts.**

108.    To date, six of the hard inquiries remain on Plaintiff's Account with Defendant TransUnion. See **Exhibit I**.

109.    To date, two of the hard inquiries remain on Plaintiff's Account with Defendant Equifax. See **Exhibit J**.

110.    None of the hard inquiries which remain on Plaintiff's Account with either of the CRA Defendants is designated as "disputed." See **Exhibits I and J**.

**C.    Plaintiff is Entitled to Statutory Damages or Actual Damages, Punitive Damages, Attorneys' Fees, and Costs.**

111.    15 U.S.C. § 1681n provides that when a person willfully fails to comply with any requirement imposed upon it with respect to any consumer, the consumer may collect:

> (a)    Actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1,000;
> (b)    Punitive damages in an amount to be determined by this Court; and
> (c)    The costs of the action together with reasonable attorney's fees.

112.    The CRA Defendants' conduct, action, and inaction were willful as evidenced by their failure to designate the hard inquiries as "disputed" despite receiving actual notice of Plaintiff's disputes on at least two separate occasions.

113.    The CRA Defendants' willful and knowing actions described hereinabove were the actual and proximate cause that resulted in violations of Plaintiff's rights under the FCRA, damage

to her reputation, economic loss, emotional distress, and interference with Plaintiff's normal and usual activities.

114.    Therefore, the CRA Defendants are liable to Plaintiff for statutory damages or actual damages, whichever is greater, punitive damages, attorney's fees, and costs associated with this litigation pursuant to 15 U.S.C. § 1681n.

115.    In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs associated with this litigation, and attorney's fees pursuant to 15 U.S.C. § 1681o.

116.    WHEREFORE, Plaintiff, Shauna Cooke, seeks a judgment against Defendants TransUnion and Equifax for willful noncompliance of the FCRA and seeks: (i) actual damages to be proven at trial or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000 per violation; (ii) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for Defendant Kenny Ross's willful violation; (iii) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3); and (iv) any further legal and equitable relief as this Court may deem just and proper.

**COUNT IV**
**FAILURE TO ENSURE THE ACCURACY OF PLAINTIFF'S CREDIT REPORT**
**IN VIOLATION OF THE FCRA 15 U.S.C. § 1681e(b)**
***Shauna Cooke v. TransUnion and Equifax***

117.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

118.    15 U.S.C. § 1681e(b) requires CRAs to follow reasonable procedures to "assure maximum possible accuracy" of the information concerning consumers in preparing consumer reports.

**A.      Plaintiff Notified the CRA Defendants of the Disputes.**

119.      As averred hereinabove, the CRA Defendants received actual notice of Plaintiff's disputes regarding the hard inquiries on at least two separate occasions. See **Exhibit H**.

**B.      The CRA Defendants Did Not Follow Reasonable Procedures to Assure Maximum Possible Accuracy of Plaintiff's Account.**

120.      After receiving the Dispute Letter in January 2025, the CRA Defendants failed to contact Plaintiff or Defendant Kenny Ross to investigate Plaintiff's disputes.

121.      After Plaintiff submitted an online dispute with Defendant Equifax in June of 2025, Defendant Equifax poorly and inadequately investigated Plaintiff's disputes, as two of the fraudulent hard inquiries remain on Plaintiff's Account with Defendant Equifax.

122.      After Plaintiff submitted an online dispute with Defendant TransUnion in June of 2025, Defendant TransUnion still failed to contact Plaintiff or Defendant Kenny Ross to investigate Plaintiff's disputes. As such, six of the fraudulent hard inquiries remain on Plaintiff's Account with Defendant TransUnion.

123.      To date, neither of the CRA Defendants maintain an accurate representation of Plaintiff's Account.

124.      Therefore, the CRA Defendants failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's account by failing to reasonably investigate Plaintiff's disputes, and continue to do so by failing to work with Plaintiff to determine the veracity of the disputes.

**C.      Plaintiff is Entitled to Statutory Damages or Actual Damages, Punitive Damages, Attorneys' Fees, and Costs.**

125.      15 U.S.C. § 1681n provides that when a person willfully fails to comply with any requirement imposed upon it with respect to any consumer, the consumer may collect:

    (a)    Actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1,000;

    (b)    Punitive damages in an amount to be determined by this Court; and

    (c)    The costs of the action together with reasonable attorney's fees.

126.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the Accounts each CRA Defendant published and maintained concerning Plaintiff.

127.    The CRA Defendants' conduct, action, and inaction were willful as evidenced by their failure to do so after receiving actual notice of Plaintiff's disputes on at least two separate occasions.

128.    The CRA Defendants' willful and knowing actions described hereinabove were the actual and proximate cause that resulted in violations of Plaintiff's rights under the FCRA, damage to her reputation, economic loss, emotional distress, and interference with Plaintiff's normal and usual activities.

129.    Therefore, the CRA Defendants are liable to Plaintiff for statutory damages or actual damages, whichever is greater, punitive damages, attorney's fees, and costs associated with this litigation pursuant to 15 U.S.C. § 1681n.

130.    In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs associated with this litigation, and attorney's fees pursuant to 15 U.S.C. § 1681o.

131.    WHEREFORE, Plaintiff, Shauna Cooke, seeks a judgment against Defendants TransUnion and Equifax for willful noncompliance of the FCRA and seeks: (i) actual damages to be proven at trial or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000 per violation; (ii) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for Defendant Kenny Ross's willful violation; (iii) the costs of instituting this action

together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3); and (iv) any further legal and equitable relief as this Court may deem just and proper.

<u>COUNT V</u>
**FAILURE TO REMOVE INACCURATE INFORMATION FROM PLAINTIFF'S CREDIT REPORT IN VIOLATION OF THE FCRA 15 U.S.C. § 1681(i)**
*Shauna Cooke v. TransUnion and Equifax*

132.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

**A.      Plaintiff Notified the CRA Defendants of the Disputes.**

133.    As averred hereinabove, the CRA Defendants received actual notice of Plaintiff's disputes regarding the hard inquiries on at least two separate occasions. See **Exhibit H**.

**B.      The CRA Defendants Failed to Correct Plaintiff's Account.**

134.    To date, six of the fraudulent hard inquiries remain on Plaintiff's Account with Defendant TransUnion. See **Exhibit I**.

135.    To date, two of the fraudulent hard inquiries remain on Plaintiff's Account with Defendant Equifax. See **Exhibit J**.

136.    To date, neither of the CRA Defendants maintain an accurate representation of Plaintiff's Account.

137.    Therefore, the CRA Defendants failed to correct Plaintiff's Accounts despite receiving actual notice of Plaintiff's disputes.

**C.      Plaintiff is Entitled to Statutory Damages or Actual Damages, Punitive Damages, Attorneys' Fees, and Costs.**

138.    15 U.S.C. § 1681n provides that when a person willfully fails to comply with any requirement imposed upon it with respect to any consumer, the consumer may collect:

22

(a)     Actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1,000;

(b)     Punitive damages in an amount to be determined by this Court; and

(c)     The costs of the action together with reasonable attorney's fees.

139.    The CRA Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's Account after receiving actual notice of such inaccuracies.

140.    The CRA Defendants' conduct, action, and inaction were willful as evidenced by their failure to do so after receiving actual notice of Plaintiff's disputes on at least two separate occasions.

141.    The CRA Defendants' willful and knowing actions described hereinabove were the actual and proximate cause that resulted in violations of Plaintiff's rights under the FCRA, damage to her reputation, economic loss, emotional distress, and interference with Plaintiff's normal and usual activities.

142.    Therefore, the CRA Defendants are liable to Plaintiff for statutory damages or actual damages, whichever is greater, punitive damages, attorney's fees, and costs associated with this litigation pursuant to 15 U.S.C. § 1681n.

143.    In the alternative, the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs associated with this litigation, and attorney's fees pursuant to 15 U.S.C. § 1681o.

144.    WHEREFORE, Plaintiff, Shauna Cooke, seeks a judgment against Defendants TransUnion and Equifax for willful noncompliance of the FCRA and seeks: (i) actual damages to be proven at trial or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than $1,000 per violation; (ii) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for Defendant Kenny Ross's willful violation; (iii) the costs of instituting this action

together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3);

and (iv) any further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

145.    Plaintiff demands a trial by jury on all matters so triable.


Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**


Date: August 28, 2025                By: */s/ Patrick W. Carothers*
                                             Patrick W. Carothers (Pa. I.D. No. 85721)
                                             Erik M. Yurkovich (Pa. I.D. No. 83432)
                                             Elizabeth A. Murphy (Pa. I.D. No. 334769)

                                             The Workers' Rights Law Group, LLP
                                             Foster Plaza 10
                                             680 Andersen Drive, Suite 230
                                             Pittsburgh, PA 15220
                                             Telephone: 412.910.8057
                                             Fax: 412.910.7510
                                             patrick@workersrightslawgroup.com
                                             erik@workersrightslawgroup.com
                                             elizabeth@workersrightslawgroup.com

                                             *Counsel for Plaintiff, Shauna Cooke*